# STEAMBOAT MONARCH *v.* MARINE RAILWAY AND DRY DOCK CO.

### (No. 5,820.)

1. Under the watercraft law a steamboat will be responsible for the hire of a barge employed by the master to carry freight, although by reason of low water the steamboat, during the course of the voyage, is compelled to forward the barge and freight by a lighter steamboat.

2. A change of owners, subsequent to the hire and service of the barge,

will not interfere with the liability of the steamboat for such previous obligation.

GENERAL TERM.—The petition in error sets forth "that the defendants, at the January term of the court, 1857, commenced an action against the plaintiff in error for the recovery of the hire of a barge, and on the trial of the case it was found by the judge, who held the term, as matters of fact, as follows:

"That a barge, owned by the defendants, was hired by them to Logan, the master of the steamboat, above described, for the purpose, as understood by both parties, of being sent by the master to Louisville, and there loaded; thence to be towed by said steamboat, with the cargo on board, to St. Louis.

"That the steamboat, not being able to perform the contemplated voyage, did not use the barge, nor take it in tow, except temporarily, in order to place it in a safe harbor.

"That the barge was then towed by another steamboat, hired for that purpose by Logan, with its cargo to St. Louis. That afterward, and before this action was brought, the steamboat Monarch became the property of new owners, by purchase and sale. That the contract price for the hire of the barge then remained unpaid.

"That the court, upon these facts, decided, as matters of law, that the defendants in error were entitled to recover the hire of the barge, as for supplies for furnishing and equipping the steamboat Monarch. To all of which the plaintiff in error excepted. That a new trial was afterward moved for and refused."

It is assigned for error:

1. That a barge hired as above set forth, was in no way an item of supplies for equipping and furnishing a steamboat, within the meaning of the law.

2. That a steamboat after a change of owners is not liable for the hire of such barge.

3. That the contract of hire was not executed, within the meaning of the statute.

Steamboat Monarch *v.* Marine Railway and Dry Dock Co.

*Coffin & Mitchell,* for plaintiff in error.

*King, Anderson & Sage,* for defendant in error.

STORER, J., delivered the opinion of the court.

The questions involved in this case mainly depend upon a proper construction of the statute under which the action is brought.

By the sec. 1, Swan 185, "steamboats, and other water-crafts, navigating the waters within, or bordering upon this State, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for *materials, supplies* or *labor,* in the building, repairing, *furnishing* or *equipping* the same."

Whatever is required for the safe navigation of the vessel by the usage of trade or the necessities of navigation, we may consider as properly embraced within the terms of the law, and were so intended by the legislature. It would be difficult to describe the many appliances required for the fitting out and equipment of a steamboat. They are constantly varying as improvements in the construction of the vessel, and her subsequent management are developed. We can not limit, therefore, the means to be employed. Whether they become actually a part of the vessel, or merely an appendage; as was well remarked by Judge Read, in 11 Ohio, 460, *Canal boat Huron* v. *Simmons,* "such a construction would be too narrow. The statute is equitable in its object, and will receive a liberal construction, to carry the design of its enactment into effect."

A barge, hired by a steamboat navigating the Ohio, to be towed by her laden with cargo, covered by bills of lading, given by the owners, and insured in the same policy in which a risk is taken on the steamboat, we think is one of the means to be employed to complete the voyage. Such a mode is necessary at certain seasons of the year, when the

river is low, as well for the protection of the steamboat as the transportation of her cargo.

In such a case a barge is but a lighter; and if by the customs of navigation, on entering a port, or passing over shoals, it should become necessary to employ such a craft, it could not be doubted but the boat would be liable for the hire. Indeed, a policy upon a cargo on board the steamboat would in such a case cover it when shipped upon the lighter. Thus Lord Mansfield in *Pelly* v. *Royal Ex. Ass. Co.*, 1 Burrows 347, held, "When goods are insured, till landed, without express words, the insurance extends to the *boat*, the usual method of landing goods out of a ship, upon the shore." See also, 6 Mass. 202, *Parsons* v. *Mass. F. & M. Ins. Co.*; 3 Wendell 290, *Coggeshall* v. *Am. Ins. Co.*

If then such is the liability of the insurers, it would seem there was not only a permission given to the master of the vessel to employ a barge, but it became his duty to do so, and the vessel itself is liable for the hire.

But the precise question is decided against the steamboat under a law similar to our own, and upon the ground we have stated, by the supreme court of Missouri, in 11 Mo. 113, *Gleim* v. *Steamboat Belmont;* and by the supreme court of Iowa, 1 G. Greene 398, *Steamboat Kentucky* v. *Brooks.*

We find no error therefore in the ruling of the judge on this point. The second question is one more of fact than of law. It must depend upon the evidence whether the hiring of the barge had actually taken place, or whether the contract was only executory. If the agreement was yet to be performed, and no absolute obligation existed, the ruling of our supreme court, in 20 Ohio 54, *Canal boat, etc.* v. *Kent,* would apply. We find, however, the barge was in the possession of the steamboat, which towed her from Cincinnati to Louisville, and was then transferred to another boat, in company with which she performed the voyage to St. Louis, as was intended to have been performed with the Monarch.

The contract, therefore, commenced at Cincinnati and was completed, so far as to create a liability upon the boat

whenever the barge was taken into possession by the master, and the boat was bound for the hire until the barge was returned to the owners. It was immaterial to them what was done in the interim with their property. They had no control over it, and could not have claimed the use, so far as the contract for its hire continued. On this point, therefore, we find no error.

The other question has already been decided by this court, in the case of *Steamboat Baltimore* v. *Levi et al.*, 2 Handy 30, which has been affirmed on error, by the supreme court in bank. It is but the reaffirmation of the rule settled in 12 Ohio, 341, *Lewis* v. *Schooner Cleveland;* 14 Ohio, 37, *Steamboat Waverly* v. *Clements;* 14 Ohio, 410, *Jones* v. *Steamboat Commerce;* 16 Ohio, 276, *Treet* v. *Canal boat Ætna;* 18 Ohio, 187, *Webster* v. *Brig Andes.*

The judgment of the court below is affirmed.